J. MICHAEL KEYES (SBN 262281)
keyes.mike@dorsey.com
CONNOR J. HANSEN (*pro hac vice* pending)
hansen.connor@dorsey.com
DORSEY & WHITNEY LLP
Columbia Center
701 Fifth Avenue, Suite 6100
Seattle, WA 98104
Telephone:  (206) 903-8800
Facsimile:  (206) 903-8820

*Attorneys for Plaintiff*
*Business Architecture Guild*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BUSINESS ARCHITECTURE GUILD, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL LAMBERT, an individual, and 8781877 CANADA INC. d/b/a BUSINESS ARCHITECTURE INFO, a Canadian corporation<br><br>Defendant. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**(1) Breach of Contract**<br><br>**(2) Trademark Infringement Under 15 U.S.C. § 1114;**<br><br>**(3) Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a);**<br><br>**(4) Unfair Competition Under Cal. Bus. & Prof. Code § 17200; and**<br><br>**(5) Common Law Unfair Competition and False Designation of Origin**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Business Architecture Guild ("The Guild" or "Plaintiff") brings this Verified Complaint against Defendants Daniel Lambert ("Lambert") and 8781877 Canada Inc. d/b/a Business Architecture Info ("BAI") (collectively "Defendants") and alleges as follows:

## I.     INTRODUCTION

1.     Plaintiff brings this lawsuit to prevent Defendant from further willfully and intentionally misappropriating materials obtained from The Guild and to protect the substantial goodwill that The Guild has developed over a decade in its distinctive trademarks, service marks, and certification marks ("The Guild Marks").

2.     Founded in 2010, The Guild is a nonprofit organization devoted to promoting best practices and expanding the knowledge base of the business architecture profession.  Since its launch, The Guild has built a stellar reputation as being the preeminent organization for delivering educational resources, standards, guidelines, certification, and supporting materials in the field of business architecture.  The Guild markets its products and resource materials through accredited training partners.

3.     The Guild has spent considerable time and resources to become a staple of the business architecture community with thousands of members and contributors.

4.     Defendant Lambert is a former member of The Guild.  Defendant Lambert owns 8781877 Canada Inc., which does business as "Business Architecture Info." ("BAI").

5.     As a former member of the Guild, Lambert has entered into agreements with The Guild, which expressly prohibit the commercial use of Plaintiff's materials.

6.     Regrettably, Lambert has a long history of misappropriating material created by Plaintiff and its members.  In this latest installment, Lambert, through BAI, offers training materials and courses to consumers, including material surreptitiously obtained from The Guild. Lambert and BAI are offering this misappropriated material to consumers and potential consumers for their own financial gain.  Defendants' conduct is causing substantial harm and damage to The Guild in an amount of at least $75,000.

7.     BAI offers goods and services—including resource materials obtained from The Guild—that compete directly with The Guild's goods and services, and markets those goods and

services to the same individuals and professionals as The Guild.  Lambert and BAI's conduct is likely to cause confusion, deception, or mistake in the marketplace.

8.      Defendants had actual and statutory knowledge of The Guild Marks prior to offering their competing goods and services.

9.      Consumers are likely to believe that Defendants' competing goods and services are sponsored by, affiliated with, approved by, or otherwise sourced from The Guild.

10.     The goodwill and reputation that The Guild has cultivated is being threatened by Defendants' actions.  Defendants have used and continue to use marks confusingly similar to The Guild Marks to sell competing goods and services to the same consumers served by The Guild and continue to commercialize materials obtained from The Guild.  Unless Defendants are enjoined by an order of this Court, Defendants' actions will continue to cause irreparable harm to The Guild.

## II.      PARTIES, JURISDICTION, AND VENUE

11.     The Business Architecture Guild is a California nonprofit organization with is principal place of business located within this District at 2825 Porter Street, Soquel, California.

12.     Upon information and belief, Defendant Daniel Lambert is an individual residing in Montreal, Canada.  Upon information and belief, Lambert is the owner and operator of Defendant 8781877 Canada Inc. d/b/a Business Architecture Info.

13.     Upon information and belief, Defendant 8781877 Canada Inc. d/b/a Business Architecture Info is a Canadian corporation with a principal place of business 22 Avenue Dobie, Mont-Royal QC, Canada H3P 1R8.

14.     This Court has jurisdiction over the federal claims pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq*. and the laws of the State of California, and 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §§ 1338(b) and 1367.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because The Guild is a California nonprofit corporation, Defendants reside in Canada, and the amount in controversy exceeds $75,000.  Additionally, Defendant Lambert entered into a License Agreement submitting to the exclusive jurisdiction of federal courts in this state.

15.     Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), because: (1) Plaintiff resides in this District; (2) Defendant Lambert entered into a "License Agreement" with The Guild which provides that Lambert "submit[s] to the exclusive jurisdiction of the US courts of the state of California"; and (3) Defendants Lambert and BAI, by appropriating materials created by Plaintiff and its members, knew that their re-sale of those materials would be felt by Plaintiff in this District.

### III.     BACKGROUND SUPPORTING CLAIMS FOR RELIEF

**A.     Plaintiff and its Business**

16.     The Guild is a global, member-based, nonprofit professional association founded in 2010 by William Ulrich, Mike Rosen, Whynde Kuehn, Jim Rhyne, and Neal McWhorter, as well as others.

17.     Since its founding in 2010, The Guild has grown to thousands of members spanning more than 100 countries around the globe.

18.     The Guild's purpose is to promote best practices and expand the knowledgebase of the business architecture discipline.  It does this by producing bodies of knowledge, white papers, frameworks, reference models, and other resource materials and by partnering with accredited organizations to host summits, workshops, webinars, training programs, and master series in locations around the globe.

19.     The Guild has spent considerable time and resources to become a staple of the business architecture community and for more than a decade has cultivated substantial goodwill and reputation in its business, as well as its trademarks, service marks, and certification marks.

20.     The Guild currently owns the following U.S. Registrations, true and correct copies of which are attached hereto as **Exhibit A**:

a)   U.S. Registration No. 4,509,296 for BIZBOK, which issued on April 8, 2014, and covers: "Downloadable electronic publications in the nature of downloadable books in the field of Business Architecture."  This registration has become incontestable under the provisions of 15 U.S.C. § 1065.

b)   U.S. Registration No. 4,883,382 for BUSINESS ARCHITECTURE GUILD,

-4-

which issued on January 5, 2016, and covers: "Association services, namely, promoting the interests of business architects."

   c) U.S. Registration No. 4,749,947 for A GUIDE TO THE BUSINESS ARCHITECTURE BODY OF KNOWLEDGE, which issued on June 2, 2015 and covers: "Downloadable electronic publications in the nature of downloadable books in the field of business architecture."

   d) U.S. Registration No. 4,917,714 for CERTIFIED BUSINESS ARCHITECT, which issued on March 15, 2016, for "Business management, strategic and technology planning services and development of process for the analysis and the implementation of strategy plans and management projects." This registration has become incontestable under the provisions of 15 U.S.C. § 1065.

   e) U.S. Registration No. 5,510,230 for BUSINESS ARCHITECTURE MATURITY MODEL, which issued on July 3, 2018, for "computer software for assessment of Business Architecture performance."

   f) U.S. Registration No. 3,096,952 for BUSINESS ARCHITECTS ASSOCIATION, which issued on May 23, 2006, for "Association services, namely, promoting the interests of business architects."

   g) U.S. Registration No. 4,464,893 for BUSINESS ARCHITECTS ASSOCIATION, which issued on January 14, 2014, for "Association services, namely, promoting the interests of business architects."

   h) U.S. Registration No. 3,909,823 for BUSINESS ARCHITECTS ASSOCIATION INSTITUTION (BAA INSTITUTE), which issued on January 25, 2011, for "Arrangement of training courses in teaching institutes."

   i) U.S. Registration No. 5,285,339 for BAMM, which issued on September 12, 2017, for "computer software assessment of business architecture performance."

   j) U.S. Registration No. 4,917,715 for CBA, which issued on March 15, 2016, for "Business management, strategic and technology planning services and development of process for the analysis and the implementation of strategy plans

VERIFIED COMPLAINT                                         CASE NO. CASENUMBER

and management projects."

k)  U.S. Registration No. 5,210,000 for GATP, which issued on May 23, 2017, for "Training in the field of business architecture."

l)  U.S. Registration No. 5,084,034 for GUILD ACCREDITED TRAINING PARTNER, which issued on November 15, 2016, for "Training services in the field of business architecture."

21.  A number of these marks have also been registered by The Guild internationally, including in United Kingdom, the European Union, and Canada.

22.  The Guild offers resource materials relating to a wide variety of industries, including "financial services, insurance, manufacturing, transportation, government, healthcare provider, telecom, and common industry."  *See* https://www.businessarchitectureguild.org/page/INDREF

23.  The staple and most distinctive resource created by The Guild and its members is the "A Guide to the Business Architecture Body of Knowledge", known as the "BIZBOK Guide," or "BIZBOK."  The BIZBOK has been compiled by over 200 members of the business architecture community over the past decade.

24.  The BIZBOK provides an industry standard framework for business architecture practitioners and individuals to build, deploy, and leverage business architecture within their organizations.  It represents the consensus, formalization, and documentation of best practices and knowledge from active members of The Guild.  The BIZBOK is only available to members of The Guild and is a significant reason why members join The Guild.

25.  The SFIA Foundation classifies and lists official bodies of knowledge which are relevant to professional disciplines.  The SFIA Foundation defines a "body of knowledge" as having the following characteristics: (a) structured knowledge that is used by members of a discipline to guide their practice or work; (b) the prescribed aggregation of knowledge in a particular area an individual is expected to have mastered to be considered or certified as a practitioner in their discipline; and (c) a stepping stone to unifying a community.

26.  The SFIA Foundation is a not-for-profit organization established to oversee what

-6-

1    is known as the Skills Framework for the Information Age (the "SFIA Framework,"

2    pronounced *Sofia*).  The SFIA Framework is a model for describing and managing skills and

3    competencies for professionals working in a variety of industries, including information and

4    communications technology (ICT), software engineering, and digital transformation. The SFIA

5    Framework establishes a global common language for describing skills and competencies in the

6    digital world.

7        27.    The SFIA Foundation considers The Guild's BIZBOK to be a "well-established"

8    body of knowledge because it was created and maintained by recognized industry or professional

9    bodies.  Upon information and belief, the BIZBOK is the only body of knowledge for the

10   business architecture community recognized by the SFIA Foundation.

11       28.    Members of The Guild have access to the BIZBOK and other resource materials

12   produced by The Guild.  In addition, with the exception of the BIZBOK and certain other

13   "members-only" content, non-members may purchase individual webinars, models and other

14   resources through a storefront on The Guild's website, located at

15   https://www.businessarchitectureguild.org.

16       29.    The only means of becoming a Certified Business Architect is through The Guild's

17   certification program, which uses the BIZBOK as its primary resource.

18       30.    In addition to the BIZBOK, The Guild offers various industry reference models,

19   frameworks, whitepapers, and other resource materials.  The "Transportation Reference Model

20   v4.0.1" is one of the resources available to The Guild's members.  In addition, The Guild markets

21   the "Transportation Reference Model v4.0.1" to non-members via its storefront on its website, as

22   shown in the following screenshot from The Guild's website, non-members may purchase a copy

23   for $350.00.



**Transportation Reference Model v4.0.1**

Sign in for your pricing!
Price: $350.00

The business architecture reference model contained herein represents a business
architecture for a transportation company. This referenc...

VIEW

24

25

26       31.    Other Reference Models offered by the Guild, and which were accessed by

27   Lambert, include, at least, the "Healthcare Provider Industry Reference Model v2.0," the

28

-7-

"Financial Services Industry Reference Model v5.0," the "Government Industry Reference Model v4.0," the "Common Reference Model v5.0," the "Insurance Industry Reference Model v3.0," the "Business Architecture Maturity Model," "Telecom Reference Model v1.0.1,"  and the "Business Architecture Tool Evaluator."

32.     The Guild hosts a variety of events including webinars, workshops, annual summits, master series, and a global community share program.

33.     The Guild uses the Business Architecture Guild Marks in association with all of its goods and services including its resource materials, events, and certification program.

34.     For example, The Guild prominently uses BUSINESS ARCHITECTURE GUILD on the landing page of its website, and throughout its website.  As shown below, The Guild uses this mark in both a stylized form and in plaint text, and it is accompanied by the registration symbol:



Join Us    Summit    Programs ⌄    Resources ⌄    Community    Volunteer    Webinars ⌄

VISIT OUR EXECUTIVE OVERVIEW OF BUSINESS ARCHITECTURE

Welcome to the Business Architecture Guild®

35.     Similarly, The Guild prominently uses the BIZBOK mark on its website in association with the BIZBOK resource, which is available for Guild members to download on The Guild's website:

The BIZBOK® Guide

36.     The Guild is careful to include the registration symbol in association with The Guild Marks.  For example, when issuing press releases, The Guild includes the registration

-8-

symbol as shown below:

**About the Business Architecture Guild®**

The Business Architecture Guild® is an international, not-for-profit, member-based association that provides valuable resources to business architecture practitioners and others interested in the field. The Business Architecture Guild® is the source for *A Guide to the Business Architecture Body of Knowledge*® (*BIZBOK*® *Guide*) and exclusive provider of the Certified Business Architect® certification program.

37.     Further, when The Guild's partners make authorized use of The Guild marks, The Guild requires that they include the registration symbol when using The Guild marks, to the extent possible.

38.     Through its continuous, notorious, and extensive use of The Guild Marks, The Guild has cultivated substantial goodwill in The Guild Marks.

39.     The Guild promotes its goods and services on its website, through press releases, on Vimeo, and at industry events.

**B.     Lambert's Relationship with The Guild**

40.     On information and belief, Defendant Lambert founded the 871877 Canada Incorporation in 2014.  871877 Canada Inc. does business as Business Architecture Info ("BAI").

41.     Until recently, Lambert was a member of The Guild.  Lambert joined The Guild on or about April 16, 2014 and became a contributing member on or about July 13, 2015.  As set forth further below, Lambert's membership was terminated by The Guild on or about August 13, 2022.

42.     Contributing members of The Guild enter into a "Business Architecture Guild Contributor Agreement" ("Contributor Agreement") with The Guild.  Defendant Lambert entered into a Contributor Agreement on or around July 13, 2015.  A copy of the Contributor Agreement, as executed by Defendant Lambert, is attached hereto as **<u>Exhibit B</u>**.

43.     Pursuant to the Contributor Agreement, Defendant Lambert agreed to "contribute content ('Contributed Content') for the Guild" for inclusion in the BIZBOK "or for use in any material or publications, either electronically or in other forms, as determined in the sole discretion of the Guild."

44.     The Contributor Agreement provides, in pertinent part: "With the exception of

VERIFIED COMPLAINT                                                          CASE NO. CASENUMBER

'fair use' provisions of the copyright law of the United States of America and as described herein, Guild copyrighted material may only be used with the express written permission of the Guild."

45.     Lambert did not contribute any materials to The Guild.

46.     When consumers subscribe to, access, or download the BIZBOK or other materials from The Guild, they agree to a "License Agreement for Downloadable Goods" ("License Agreement").  Attached hereto as **Exhibit C** is a true and correct copy of the License Agreement. When accessing or downloading materials from The Guild, Defendant Lambert agreed to the terms of the License Agreement.

47.     The License Agreement provides that if a user is accepting the agreement "on behalf of a company, organization, educational institution, or agency . . . (an 'Entity') as its authorized legal representative, then you represent and warrant that you have the power and authority to bind such entity to these terms, and references to 'You' herein refer to both you, the individual end user, and the entity on whose behalf you are accepting this agreement."

48.     The License Agreement provides that The Guild's materials may be "modified or augmented . . . solely for the said licensee, and not for sale or distribution to or for any third party without the prior written consent of the Business Architecture Guild" and that the materials are "for licensee's internal use only and not for distribution to 3rd parties in whole, in part or in derivative format without the prior written consent of the Business Architecture Guild."

49.     The License Agreement provides: "These terms shall be governed by and construed in accordance with the law of California and the parties hereby submit to the exclusive jurisdiction of the US courts of the state of California.  In the event that legal action is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of attorney's fees and costs associated with said enforcement."

**IV.     DEFENDANT'S MISAPPROPRIATION OF THE GUILD'S MATERIALS**

50.     Without The Guild's permission, Defendants have reproduced, distributed, offered for sale, and sold materials they obtained from The Guild's website.

**A.     Lambert's Access to The Guild's Materials**

51.     During the course of his membership, Lambert accessed and downloaded several

resources from The Guild's website.  On information and belief, Defendant Lambert was acting on behalf of Defendant BAI as its authorized legal representative when it accessed or downloaded the materials from The Guild.

52.     Attached hereto as **Exhibit D** is a true and correct copy of Lambert's Member Profile with The Guild, which was generated on July 27, 2022.  Page 5 of the Member Profile includes Lambert's "Order History," which shows that he accessed or downloaded twenty-one files from The Guild's website.  As shown in the following screenshot from **Exhibit D**, Lambert downloaded The Guild's "Transportation Reference Model v4.0.1" on May 2, 2022.

**Order History**

| Invoice Date | Item Description | Quantity | Unit Price |
| --- | --- | --- | --- |
| 5/2/2022 | Transportation Reference Model v4.0.1 | 1 | $0.00 |

53.     As a member of The Guild, Lambert did not pay to download the Transportation Reference Model.  When accessing or downloading these materials, Defendant Lambert agreed to the terms of the aforementioned License Agreement.

54.     Further, each Reference Model accessed by Lambert also contained a cover page noting that it was "FOR INTERNAL USE ONLY AND NOT FOR DISTRIBUTION TO 3RD PARTIES."

55.     As set forth below, after accessing or downloading content from The Guild, Defendants reproduced, distributed, offered for sale, and sold that content for profit.

**B.     Defendants' Commercialization of The Guild's Materials**

56.     The Guild's content has been and continues to be sold, marketed, and otherwise commercialized through the BAI website.

57.     For example, content from The Guild's "Transportation Reference Model v.4.0.1" is reproduced in a competing resource offered by Defendants, namely the "Transportation Business Architecture Framework and Examples Excel File" that BAI markets on its website, as shown below, available at: https://www.businessarchitecture.info/transportation-business-architecture-framework.

VERIFIED COMPLAINT                                                    CASE NO. CASENUMBER

58.     The Parties' models are each thousands of lines long.  Defendants' "Transportation Business Architecture Framework and Examples Excel File" includes hundreds, if not thousands of lines of content reproduced from The Guild's "Transportation Reference Model v4.0.1."  As one example, attached hereto as **Exhibits E and F** are (1) a screenshot from The Guild's "Transportation Reference Model v.4.0.1" and (2) a screenshot from the Defendants' "Transportation Business Architecture Framework and Examples Excel File."  The highlighted content in each screenshot is content that is identical between the Parties' files.

59.     The above example is but one of many examples of content from The Guild's "Transportation Reference Model v.4.0.1" that Defendants' copied into their "Transportation Business Architecture Framework and Examples Excel File."

60.     Defendants' "Transportation Business Architecture Framework and Examples Excel File" includes a column showing the "Created Timestamp" for the content in the file.  As shown in the screenshot below the "Created Timestamp" for the content that is identical between the Parties' files is May 2, 2022, the same day that Lambert downloaded The Guild's "Transportation Reference Model v.4.0.1."

VERIFIED COMPLAINT                                                    CASE NO. CASENUMBER

| | E | F |
|---|---|---|
| | **Created By** | **Created Timestamp** |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:31 |
| | Anonymous User | 5/2/22 12:32 |
| | Anonymous User | 5/2/22 12:32 |

61.    Despite including dozens if not hundreds of lines of content copied from The Guild's framework, Defendants "Transportation Business Architecture Framework and Examples Excel File" includes a statement claiming that it was created by Lambert for BAI and includes a statement that the material is not for external distribution, as shown below:



**Transportation Business Architecture Framework and Examples**

The data from the Transportation Business Architecture framework and examples has been prepared by Daniel Lambert for 8781877 Canada Inc. (dba Business Architecture Info). Its business architecture content can be used by airlines & aviation, freight & package transportation, logistics, public transport, ocean transportation, railway transportation, and truck transportation. This business architecture framework and examples include a mapping of business capabilities, value streams, information concepts, organization, and some stakeholders, among others.

8781877 Canada Inc. (dba Business Architecture Info) represents that this content is delivered as-is without any claim of warranty and is to be used at your own risk. You may modify or enhance it at your own discretion. The data in this framework are not meant to represent a complete business architecture perspective of your organization, but as a guide to craft more rapidly your own specific business architecture model within your organization. This content was generated using the IRIS Business Architect software application. This content has been created with a lot of care but is not free from errors or omissions.

THIS CONTENT IS FOR INTERNAL USE ONLY AND IS NOT FOR DISTRIBUTION OUTSIDE YOUR ORGANIZATION TO 3RD PARTIES.

62.    As mentioned above, Defendants offer for sale and sell the "Transportation Business Architecture Framework and Examples Excel File" for $1,499.50.

63.    On information and belief, Defendants also provided the "Financial Architecture Framework and Examples Excel File" to paying customers who attended certain courses hosted by Defendants and its partner, EA Principals, including at least the "Financial Services Agile Business Architecture" course.

64.    On information and belief, EA Principals, a Virginia-based "specialist training

provider," serves as Defendants sole training partner, and Defendants market and offer training services through EA Principals.  Lambert is listed on EA Principals' website as a "Trainer," and the organization maintains a separate profile page containing his professional biography, available at:  https://www.eaprincipals.com/content/daniel-lambert-msc.

65.     The materials and programs offered by EA Principals, on behalf of Defendants, contain material wrongfully appropriated from The Guild.

66.     Indeed, in association with the "Financial Services Agile Business Architecture" course Defendants presented content directly from The Guild's BIZBOK.  Shown below is a screenshot of one slide from Defendants presentation materials, providing an example of Defendants reproduction and display of The Guild's materials.



67.     Defendants' presentation materials include a statement claiming that the content therein was prepared by Lambert, as shown below:



68.     Defendants are clearly misappropriating The Guild's content and selling and presenting it to consumers as if it is their own.

69.     While the "Transportation Business Architecture Framework and Examples Excel File" is used as an example of Defendants' misappropriation herein, on information and belief,

Defendants have misappropriated The Guild's content in several other reference models, frameworks, and other resources, including but not limited The Guild's "Healthcare Provider Industry Reference Model v2.0," the "Financial Services Industry Reference Model v5.0," the "Government Industry Reference Model v4.0," the "Common Reference Model v5.0," the "Insurance Industry Reference Model v3.0," the "Business Architecture Maturity Model," "Telecom Reference Model v1.0.1," and the "Business Architecture Tool Evaluator."

70.     On July 28, 2022, The Guild, through counsel, sent Lambert a "Notice of Disciplinary Action and Opportunity to Submit Written Statements and Evidence," identifying Defendants' misappropriation of The Guild's materials.  A true and correct copy of the July 28, 2022 letter is attached hereto as **Exhibit G**.

71.     In the July 28, 2022 letter, The Guild demanded that Lambert "immediately cease and desist from republishing or making derivative works of Guild copyrighted materials for any purposes whatsoever."  The Guild also informed Lambert that "unless [he] request the opportunity to submit written statements and evidence on this matter" he would be subject to "disciplinary action" including "permanent expulsion from The Guild."

72.     Defendants did not respond to The Guild's July 28, 2022 letter.  Accordingly, The Guild terminated Lambert's membership on August 13, 2022.

73.     The Guild did not grant Defendants permission to reproduce, distribute, offer for sale, or sell any content from The Guild's "Transportation Reference Model v.4.0.1," or any of The Guild's other resources.

74.     The Guild confirmed that Defendants' "Transportation Business Architecture Framework and Examples Excel File" directly copied content from The Guild's "Transportation Reference Model v.4.0.1" on or about November 4, 2022.

75.     Defendants continue to reproduce, distribute, offer for sale, and sell content misappropriated from The Guild.

76.     On information and belief, because Defendants sell their materials for several thousands of dollars, the amount of damage caused to The Guild is in excess of $75,000.

VERIFIED COMPLAINT                                                    CASE NO. CASENUMBER

### C.   Defendants' Marketing of The Guild's Materials and Other Competing Goods and Services

77.   Defendants market their goods and services, including materials obtained from The Guild, through their website, https://www.businessarchitecture.info/

78.   Defendants use The Guild Marks and marks confusingly similar thereto in association with marketing their goods and services on, at least, the BAI website and in materials associated with webinars offered by Defendants.

79.   BAI offers many of the same goods and services as The Guild.  According to its website, BAI offers "private courses and consulting services" and "pre-built, ready-to-go and customizable industry-based business architecture frameworks and examples with capability maps among others."  *See* https://www.businessarchitecture.info/about.

80.   BAI markets its goods and services to professionals and individuals in many of the same industries as The Guild, namely the "energy and utilities, financial services, healthcare, insurance, manufacturing, pharmaceutical, retail, telecom, and transportation" industries. *See* https://www.businessarchitecture.info/our-content.

81.   BAI sells these frameworks and other content on its website for hundreds of dollars.  For example, BAI's "Transportation Business Architecture Framework and Examples Excel File" is for sale online for $1,499.50 and its "Transportation Framework Diagram PDF File" is for sale online for $399.50.  *See* https://www.businessarchitecture.info/transportation-business-architecture-framework.

82.   BAI's courses are similarly priced in the hundreds of dollars.  For example, the fee to attend BAI's "Financial Services Agile Business Architecture" course is $1,995.

83.   Defendants also market their good and services through EA Principals, which presents Lambert on its website as a business architecture expert and "Trainer" with experience working with companies in the "pharmaceuticals, utilities, transportation, computer software, healthcare, financial services, insurance companies, telecom, and [] public sector."  *See* https://www.eaprincipals.com/content/daniel-lambert-msc.

84.   EA Principals offers business architecture training programs throughout the United

VERIFIED COMPLAINT

CASE NO. CASENUMBER

1  States, including in California, as shown below:



https://www.eaprincipals.com/training/course-schedule?page=4.

85.    As described above, during training courses offered by Defendants, Defendants have used The Guild's BIZBOK mark.  Defendants have similarly used The Guild's BUSINESS ARCHITECTURE GUILD mark, including in its stylized form, as shown by the screenshots from Defendants' presentation materials for the "Financial Services Agile Business Architecture" course.



86.    The Guild has not authorized or consented to Defendants' use of The Guild Marks.

87.    Defendants market all of their goods and services under the mark "Business Architecture Info," which is confusingly similar to The Guild Marks.

88.    Defendants' goods and services are nearly identical to The Guild's goods and services.  Indeed, as set forth above, Defendants' resource materials include content obtained from The Guild.

89.    The Guild Marks are conceptually and commercially strong.  The Guild has continuously used The Guild Marks for over a decade; has obtained several registrations for The

-17-

Guild Marks, including incontestable registrations; has enforced its rights in and to The Guild Marks against third parties; and has invested substantially in the marketing and promotion of goods and services offered under The Guild Marks.

90.     The Guild and Defendants market their goods and services in the same channels of trade, including their respective websites and at industry events.

91.     Defendants began using The Guild Marks and confusingly similar imitations thereof after The Guild began its use of The Guild Marks.

92.     Both The Guild and Defendants market their goods and services to consumers in the same industries, for example, the financial services, insurance, manufacturing, transportation, government, healthcare, and telecom industries.

93.     Defendants had actual and constructive knowledge of The Guild's rights in and to The Guild Marks.

94.     The Guild consistently requires the inclusion of the registration symbol (®) when using The Guild Marks.

95.     On October 21, 2016, The Guild sent an email to Lambert relating to three events marketed on Lambert's website, all of which were marketed as sponsored by The Guild.  The Guild provided notice to Lambert that for any events sponsored by The Guild, Lambert needed to use The Guild's trademark in its proper form, including the registration symbol: "Business Architecture Guild®."  The Guild then asked Lambert to remove text from the two other posts because The Guild was "not in partnership with any of these companies" and does "not partner without an agreement."  A true and correct copy of this email exchange is attached hereto as **Exhibit H**.

96.     Accordingly, at least as early as October 2016, Defendants had actual knowledge of The Guild's rights in and to The Guild Marks.

97.     Consumers are likely to be confused into believing that The Guild sponsors or approves Defendants' goods and services and/or that Defendants goods and services emanate from or are related to The Guild.

# I.      FIRST CLAIM FOR RELIEF

### (Breach of Contract Against Defendant Lambert)

98.     Plaintiff realleges and restates all prior paragraphs as if fully restated herein.

99.     The Business Architecture Guild Contributor Agreement signed by Lambert is a valid and enforceable contract.  The Contributor Agreement prohibits the use of the BIZBOK or other materials obtained from The Guild without the "express written permission of The Guild."

100.    Defendant Lambert has reproduced, distributed, offered for sale, and sold materials obtained from The Guild without The Guild's permission.  Defendant Lambert's actions constitute a breach of the Contributor Agreement.

101.    The License Agreement for Downloadable Goods is a valid and enforceable contract.  The License Agreement was in effect when Lambert accessed or downloaded materials from The Guild's website. The License Agreement prohibits the "sale or distribution to or for any third party without the prior written consent of the Business Architecture Guild" and "distribution to 3rd parties in whole, in part or in derivative format without the prior written consent of the Business Architecture Guild."

102.    Defendant Lambert has reproduced, distributed, offered for sale, and sold materials obtained from The Guild without The Guild's permission.  Defendant Lambert's actions constitute a breach of the License Agreement.

103.    On information and belief, Defendant Lambert continues to reproduce, distribute, offer for sale, and sell materials obtained from The Guild without The Guild's permission.

104.    On information and belief, Defendants conduct is willful, intentional, malicious, and in bad faith.

105.    As a result of Defendant Lambert's breach, The Guild has suffered and continues to suffer monetary and non-monetary injury and harm in an amount to be proven at trial.

106.    Moreover, as a result of Defendant Lambert's ongoing breach, The Guild has been injured and faces irreparable harm.  The Guild is threatened with losing its competitive advantage, members, recognition from the SFIA Foundation, and goodwill that would be impossible to fully compensate unless Defendant Lambert is enjoined and restrained by order of

-19-

1    this Court.

2    ## II.    SECOND CLAIM FOR RELIEF

3    ### (Trademark Infringement Under 15 U.S.C. § 1114)

4    107.    Plaintiff realleges and restates all prior paragraphs as if fully restated herein.

5    108.    Defendants have adopted and used in U.S. commerce The Guild Marks and

6    confusingly similar imitations thereof.  Defendants' unauthorized use of The Guild Marks is

7    likely to cause confusion, deception, or mistake in the marketplace because consumers are likely

8    to believe there is a connection, affiliation, or sponsorship between The Guild and Defendants.

9    109.    Defendants' conduct constitutes infringement of The Guild Marks in violation of

10   the Lanham Act, 15 U.S.C. § 1114(1).

11   110.    Defendants had statutory and actual notice of The Guild's rights in and to The

12   Guild Marks.

13   111.    On information and belief, Defendants' conduct is willful, intentional, malicious,

14   and in bad faith.

15   112.    As a direct and proximate result of Defendants' conduct, The Guild has suffered

16   and will continue to suffer irreparable loss of income, profits, and good will, and Defendants will

17   continue to unfairly acquire income, profits, and goodwill.

18   113.    Defendants' conduct will cause further irreparable injury to The Guild if

19   Defendants are not restrained by this Court from further violation of The Guild's rights.

20   ## III.    THIRD CLAIM FOR RELIEF

21   ### (Unfair Competition and False Designation of Origin Under 15 U.S.C. § 1125(a))

22   114.    Plaintiff realleges and restates all prior paragraphs as if fully restated herein.

23   115.    Defendants' have adopted and used in U.S. commerce The Guild Marks and

24   confusingly similar imitations thereof to market and sell competing goods and services.

25   Defendants' unauthorized use is likely to cause confusion, deception, or mistake in the

26   marketplace because consumers are likely to believe there is a connection, affiliation, or

27   sponsorship between The Guild and Defendants.

28   116.    Defendants' conduct constitutes federal unfair competition and the false

-20-

designation of origin and false descriptions and representations in violation of the Lanham Act, 15 U.S.C. § 1125(a).

117.   Defendants had statutory and actual notice of The Guild's rights in and to The Guild Marks.

118.   On information and belief, Defendants conduct is willful, intentional, malicious, and in bad faith.

119.   As a direct and proximate result of Defendants' conduct, The Guild has suffered and will continue to suffer irreparable loss of income, profits, and good will, and Defendants will continue to unfairly acquire income, profits, and goodwill.

120.   Defendants' conduct will cause further irreparable injury to The Guild if Defendants are not restrained by this Court from further violation of The Guild's rights.

### IV.   FOURTH CAUSE OF ACTION

**(State Statutory Unfair Competition Cal. Bus. & Prof. Code § 17200 *et seq.*)**

121.   Plaintiff realleges and restates all prior paragraphs as if fully restated herein.

122.   The Guild is the owner of all rights, title, and interest in The Guild Marks.

123.   On information and belief, Defendants have intentionally appropriated The Guild Marks with the intent of causing confusion, mistake, and deception as to the source of their goods and services with the intent to pass off their goods and services as those of The Guild.

124.   Defendants' conduct, namely the misappropriation of The Guild Marks, in connection with the offer for sale, sale, and advertisement of Defendants' goods and services have violated the unfair competition laws of the State of California, specifically Cal. Bus. & Prof. Code § 17200 *et seq*.

125.   On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

126.   As a direct and proximate result of Defendants' conduct, The Guild has been and will continue to be irreparably harmed and damages.

## V.    FIFTH CAUSE OF ACTION

### (Unfair Competition Under California Common Law)

127.    Plaintiff realleges and restates all prior paragraphs as if fully restated herein.

128.    The Guild is the owner of all rights, title, and interest in The Guild Marks.

129.    Defendants are promoting, advertising, and providing goods and services under a mark that is confusingly similar to The Guild Marks, in violation of California's common law of unfair competition.

130.    Defendants' unauthorized use of The Guild Marks and marks confusingly similar thereto for goods and services competing with The Guild's goods and services is likely to cause confusion, deception, or mistake in the marketplace as to the source or sponsorship of Defendants goods and services.

131.    On information and belief, Defendants' conduct is willful, intentional, malicious, and in bad faith.

132.    As a direct and proximate result of Defendants' conduct, The Guild has suffered and will continue to suffer irreparable loss of income, profits, and good will, and Defendants will continue to unfairly acquire income, profits, and goodwill.

133.    Defendants' conduct will cause further irreparable injury to The Guild if Defendants are not restrained by this Court from further violation of The Guild's rights.

## VI.    PRAYER FOR RELIEF

Wherefore, Plaintiff demands judgement and relief against Defendants and respectfully request that this Court:

1.    Preliminarily and permanently enjoin, restrain, and forbid Defendants, its officers, agents, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with it or any of them, from:

(i)    accessing, downloading or otherwise acquiring materials from The Guild; imitating, copying, reproducing, distributing, offering for sale, or selling materials obtained from The Guild; and displaying advertising, promoting, or otherwise using The Guild Marks or any marks that are confusingly similar thereto in any manner;

-22-

(ii) using any false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' businesses or services are in any way associated or affiliated with or related to The Guild or The Guild's services;

(iii) engaging in any activity constituting unfair competition with The Guild or with The Guild's rights in, or to use, The Guild Marks;

(iv) further using The Guild Marks, or confusingly similar variations thereof, in or as a part of any advertising, marketing and/or media material, web page text, social media platform, domain name, email, or other communication;

(v) assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in sub-paragraphs (i)-(iv) above;

2. Direct Defendants to return, relinquish, or destroy any materials obtained or derived from The Guild and to remove from any location under their control (including any websites) any materials obtained or derived from The Guild;

3. Direct Defendants to file with the Court and serve on counsel for The Guild, a sworn written statement as provided in 15 U.S.C. § 1116;

4. Direct Defendants to account to The Guild for its profits arising from the conduct complained of herein;

5. Award The Guild its actual damages incurred as a consequence of Defendants' wrongful conduct as described herein to the full extent permitted pursuant to 15 U.S.C. § 1117(a) and California law;

6. Award The Guild its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to the Parties' agreements, 15 U.S.C. § 1117, and the inherent authority of the Court;

7. Award The Guild treble damages as provided for under the Lanham Act;

8. Award The Guild prejudgment interests at a rate provided for under California law, as applicable; and

VERIFIED COMPLAINT                                                          CASE NO. CASENUMBER

9.      Award The Guild such other and further relief as the Court deems just and proper.

## VII.   JURY DEMAND

The Guild demands a trial by jury on all of its claims and any other matters so triable.


Dated:  March 2, 2023                          DORSEY & WHITNEY LLP


                                    By:   */s/ J. Michael Keyes*
                                          J. Michael Keyes (SBN 262281)
                                          Connor J. Hansen (*pro hac vice* pending)
                                          keyes.mike@dorsey.com
                                          hansen.connor@dorsey.com

                                          *Attorneys for Plaintiff*
                                          *Business Architecture Guild*

VERIFIED COMPLAINT                                    CASE NO. CASENUMBER

**VERIFICATION**

I, William Ulrich, declare as follows:

1.      I am a co-founder and President of Plaintiff Business Architecture Guild ("The Guild").  I have reviewed the foregoing Verified Complaint and verify that the statements made therein are true and correct to the best of my knowledge, information, and belief.

2.      I have personal knowledge of The Guild, The Guild's activities, The Guild's trademark rights, and The Guild's interactions with Defendants, including those set forth out in the foregoing Verified Complaint, and if called to testify, I would testify as to the matters stated therein.

3.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States that the foregoing factual statements in the Verified Complaint about myself, The Guild, The Guild's activities, The Guild's trademark rights, and The Guild's interactions with Defendants are true and correct factual statements.

Executed on _March 2,_____, 2023 in _Soquel_____, California.

_William Ulrich_____
William Ulrich

-25-