**LEXERO LAW**
Eric Menhart, Esq. (Admitted *Pro Hac Vice*)
80 M St SE Ste 100
Washington, DC 20003
Telephone: (855) 453-9376
Facsimile: (855) 453-93760
Eric.Menhart@Lexero.com

Attorneys for Defendants
DANIEL LAMBERT
8781877 CANADA INC. d/b/a BUSINESS ARCHITECTURE INFO

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

BUSINESS ARCHITECTURE GUILD, a California nonprofit corporation,

Plaintiff,

vs.

DANIEL LAMBERT, an individual, and 8781877 CANADA INC. d/b/a BUSINESS ARCHITECTURE INFO, a Canadian corporation,

Defendants.

Case No. 5:23-CV-009440-BLF

**OPPOSITION TO PLAINTIFFS' MOTION TO CONFIRM ARBITRATION AWARD**

Before: Hon. Beth Labson Freeman
Courtroom: 3
Hearing Date: January 2, 2025
Time: 9:00 a.m.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... i

I. INTRODUCTION AND SUMMARY OF ARGUMENT .......... 1

II. BRIEF FACTUAL AND PROCEDURAL OVERVIEW .......... 1

A. The Relationship Between Plaintiff and Defendants .......... 1

B. The Litigation and Arbitration .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 5

A. The Arbitrator Manifestly Disregarded the Language of the License Agreement and the Law of Contracts to Conclude that Defendants Violated Their Agreements with Plaintiff .......... 5

B. The Arbitrator Manifestly Disregarded the Law of Fair Use to Conclude that Defendants Infringed Plaintiff's Trademark .......... 8

V. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Adobe Sys. Inc. v. Christenson,
809 F.3d 1071 (9th Cir. 2015) .......... 9

AMF Inc. v. Sleekcraft Boats,
599 F.2d 341 (9th Cir. 1979) .......... 9

Arcona, Inc. v. Farmacy Beauty, LLC,
976 F.3d 1074 (9th Cir. 2020) .......... 9

Biller v. Toyota Motor Corp.,
668 F.3d 655 (9th Cir. 2012) .......... 4, 6

Bosack v. Soward,
553 F.3d 1096 (9th Cir. 2009), cert den. 130 S.Ct. 1522 (2010) .......... 3

Comedy Club, Inc. v. Improv West Assoc.,
553 F.3d 1277 (9th Cir. 2009) .......... 1, 3

Coutee v. Barington Capital Group, L.P.,
336 F.3d 1128 (9th Cir. 2003) .......... 4, 10

Entrepreneur Media v. Smith,
279 F.3d 1135 (9th Cir. 2002) .......... 9

Federated Dep't. Stores v. United Food Commercial Workers Union, Local 1442,
901 F.2d 1494 (9th Cir. 1990) .......... 4

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
499 U.S. 340 (1991) .......... 7

Frederick Meiswinkel, Inc. v. Laborers Local Union 126,
744 F.2d 1374 (9th Cir. 1984) .......... 5

Hensley Mfg. v. ProPride, Inc.,
579 F.3d 603 (6th Cir. 2009) .......... 8

Lagstein v. Certain Underwriters at Lloyd's, London,
607 F.3d 634(9th Cir. 2010) .......... 4, 5

Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674,
916 F.2d 63 (2d Cir. 1990) .......... 3

Lenz v. Universal Music Corp.,
572 F.Supp.2d 1150 (N.D. Cal. 2008) .......... 6

Manley v. AmBase Corp.,
337 F.3d 237 (2d Cir. 2003) .......... 5, 6

Mattel, Inc. v. Walking Mountain Prods.,
353 F.3d 792 (9th Cir. 2003) .......... 9

Matteson v. Ryder Sys. Inc.,
99 F.3d 108 (3d Cir. 1996) .......... 3

Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,
44 F.3d 826 (9th Cir. 1995) .......... 4

Off. Airline Guides, Inc. v. Goss,
6 F.3d 1385 (9th Cir. 1993) .......... 9

Prostyakov v. Masco Corp.,
513 F.3d 716 (7th Cir. 2008) .......... 4, 5

Tie Tech, Inc. v. Kinedyne Corp.,
296 F.3d 778 (9th Cir. 2002) .......... 9

United Steelworkers of America v. Enterprise Wheel & Car Corp.,
363 U.S. 593 (1960) .......... 4

**FEDERAL STATUTES**

9 U.S.C. § 10(a)(4) .......... 1, 3

15 U.S.C. § 1114(1) .......... 9

17 U.S.C. § 107 .......... 6

**ARTICLES**

J. Liu, "An Empirical Study of Transformative Use in Copyright Law," 22 STAN. TECH. L. REV. 163 (2019) .......... 7

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Arbitration proceedings must be fundamentally fair, including a thorough consideration of *all* the claims and defenses at issue in the case. Under the Federal Arbitration Act, where an arbitrator has so "imperfectly executed" her powers that a "mutual, final, and definite award upon the subject matter submitted" was not made, confirmation of the award is inappropriate. 9 U.S.C. § 10(a)(4). In the Ninth Circuit, Section 10(a)(4) has been interpreted to include situations in which the arbitrator has acted in "manifest disregard" of the law. Comedy Club, Inc. v. Improv West Assoc., 553 F.3d 1277, 1290 (9th Cir. 2009).

Unfortunately, this is one of those cases in which an arbitrator has manifestly disregarded hornbook law in a misguided effort to fully annihilate Defendants, including not only a decision on the merits that ignores the law but also an attorney fee award approximately *three times* as high as the actual damages that amounts to three-quarters of a million dollars for an arbitration that was resolved with a two-day hearing. The way this outcome was reached required the arbitrator to manifestly disregard hornbook-level contract law, hornbook-level intellectual property law, and critical language in the primary contract at issue. For these reasons, which are set forth at greater length below, Defendants respectfully suggest that this Court deny Plaintiff's motion to confirm the arbitration award.

## II. BRIEF FACTUAL AND PROCEDURAL OVERVIEW

### A. The Relationship Between Plaintiff and Defendants

Plaintiff is a professional organization in the business architecture field whose mission is essentially educational. According to Plaintiff, it advances this mission by producing various resource materials and collaborating with other organizations to present educational events. More specific to this case, Plaintiff's educational materials include what it characterizes as "industry reference models" that essentially consist of spreadsheets. Plaintiff alleged, and Defendants do not dispute, that Plaintiff holds various trademark registrations related to its brand.

Defendants are an individual, Daniel Lambert, and his company. Mr. Lambert was a previous member of Plaintiff's organization. In mid-2022, Plaintiff terminated Mr. Lambert's membership based on its allegations that Mr. Lambert had breached two contracts with Plaintiff

because he had improperly copied and used Plaintiff's marks and selected portions of its copyrighted "models," i.e., spreadsheets. Significantly, Plaintiff admits that one of these contracts, the "Contributor Agreement," specifically provided Mr. Lambert with the right to the "fair use" of Plaintiff's copyrighted materials. Plaintiff also alleged trademark and unfair competition claims.

B. The Litigation and Arbitration

Notwithstanding the fact that one of the contracts underlying this dispute, the License Agreement, requires the parties to submit their disputes to the American Arbitration Association, Plaintiff initially filed a lawsuit in this Court against Defendants in March 2023. (Dkt. 1.) In July 2023, facing a Motion to Dismiss from Defendants (Dkt. 24), Plaintiff finally submitted the matter to AAA. Plaintiff's arbitration demand made similar allegations as its original complaint in this Court, adding only a new breach of contract claim based on its Terms of Use.

Once the matter was referred to AAA, Defendants asserted their own breach of contract claim related to the License Agreement, which by its terms should never have been the subject of a Complaint in this Court. (Declaration of Eric Menhart ("Menhart Decl."), ¶ 3 and Ex. A thereto) Defendants also asserted an intentional interference claim based on Plaintiff's successful and intentional disruption with Defendants' business relationship with an entity known as EA Partners. Defendant also alleged a misrepresentation claim under the DMCA based on Plaintiff's hasty issuance of numerous takedown claims without proper investigation of whether the alleged infringement was protected by the fair use doctrine. (Menhart Decl. ¶ 3 and Ex. A thereto)

The arbitration hearing occurred on April 25 and 26, 2024. (Menhart Decl., ¶ 5) The single arbitrator hearing the case, Diana Kruze, issued two awards. The first, an interim award, held in Plaintiff's favor on every single one of its claims and every single one of Defendants' counterclaims. That interim award set Plaintiff's damages at $157,748.01. (Declaration of M. Michael Keyes ("Keyes Decl.), Ex. 2.) The second, a final award, handed Plaintiffs an eye-watering $765.493.40 in attorney fees and costs. (Id.)

The arbitrator rejected Defendants' argument that the language in a contract is to be construed against the drafter of that contract, whom all parties agree was Plaintiff. (Menhart Decl., ¶ 8; Keyes Decl., Ex. 1.) The arbitrator also rejected Defendants' argument that the Contributor

Agreement's specific language permitting Mr. Lambert to make "fair use" of Plaintiff's materials…. permitted him to make "fair use" of Plaintiff's materials. (Menhart Decl., ¶ 8; Keyes Decl. Ex. 1.) Finally, the arbitrator rejected the black-letter law argument made by Plaintiffs that the likelihood of confusion analysis in trademark law requires evidence of confusion for liability to attach. (Menhart Decl., ¶ 5; Keyes Decl. Ex. 1.) This instant filing, Defendants' Opposition, follows.

## III.   LEGAL STANDARD

Under Section 10(a)(4) of the Federal Arbitration Act, as construed by the Ninth Circuit, where an arbitrator acts in "manifest disregard" of the law, the award should not be confirmed. 9 U.S.C. § 10(a)(4); Comedy Club, Inc., 553 F.3d at 1290; see also Bosack v. Soward, 553 F.3d 1096, 1104 (9th Cir. 2009) (arbitrators exceed their powers when they express a manifest disregard of law or when they issue an award that is completely irrational) (internal citation omitted), cert den. 130 S.Ct. 1522 (2010). Significantly, there is a plethora of case law from the Ninth Circuit (and certain other federal appellate courts) holding that where an arbitrator, for example, is aware of the law and chooses to ignore it, the federal courts should not rubber-stamp the decision simply because it emanates from an arbitral body.[1]

The law is particularly clear on this issue in cases involving contracts. For example, the federal courts do not owe any deference to an arbitrator's decision when the award does not "draw its essence" from the agreement at issue and the arbitrator appears to be dispensing his or her "own brand or industrial justice." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960), cited in Federated Dep't. Stores v. United Food Commercial

---

[1] Other circuits agree on this issue. For example, the Second Circuit has held that the deference owed to arbitration awards is "not the equivalent of a grant of limitless power." Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674, 916 F.2d 63, 65 (2d Cir. 1990). The Third Circuit has been even more explicit, warning that "courts are neither entitled nor encouraged simply to rubber stamp the interpretations and decisions of arbitrators." Matteson v. Ryder Sys. Inc., 99 F.3d 108, 113 (3d Cir. 1996).

Workers Union, Local 1442, 901 F.2d 1494, 1496 (9th Cir. 1990). More specifically, an arbitration award should not be confirmed when it evidences manifest disregard of the law, which under the controlling case law has been held to mean "something more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law." Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 641 (9th Cir. 2010) (citing Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 832 (9th Cir. 1995).). To vacate an arbitration award on the ground of manifest disregard, the record must reveal that the arbitrator "recognized the applicable law and then ignored it." Biller v. Toyota Motor Corp., 668 F.3d 655, 665 (9th Cir. 2012). This scrutiny, moreover, is not limited to the law—in certain cases, including (as argued below) this one, "legally dispositive facts are so firmly established that an arbitrator cannot fail to recognize them without manifestly disregarding the law." Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003).

Manifest disregard of the law, therefore, represents something more than a mere mistake about the facts (which an arbitrator is entitled to make) or a garden-variety legal error that would result in reversal had it been made by an Article III judge. Rather, where an arbitrator *recognizes* the existence of the applicable law and then ignores or disregards it, manifest disregard exists. See, e.g., Coutee v. Barington Capital Group, L.P., 336 F.3d 1128, 1133 (9th Cir. 2003) (where award is "legally irreconcilable" with the undisputed, legally dispositive facts, there is manifest disregard).[2] And if an award conflicts directly with the contract at issue in a case, the courts have

---

[2] As noted by the Seventh Circuit,

> where the arbitrator bases his or her decision on something other than the contract and terms of the agreement between the parties from which the dispute has arisen (such as when the arbitrator's decision is based on his or her idea of what would be fair or just), or if the arbitrator in the Award effectively ignores or revises important terms of the contract or creates a new kind of agreement between the parties than the contract that they entered into, the award may be vacated.

Prostyakov v. Masco Corp., 513 F.3d 716, 723 (7th Cir. 2008).

held that said award "cannot" be a plausible interpretation. Frederick Meiswinkel, Inc. v. Laborers Local Union 126, 744 F.2d 1374, 1377 (9th Cir. 1984). The critical inquiry is whether the award is irrational with respect to the language of the contract. Lagstein v. Certain Underwriters at Lloyd's, 607 F.3d 634, 641-42 (9th Cir. 2010). Here, the award was irrational both with respect to the language of the contracts between the parties and with respect to long-established legal principles of the fair use doctrine in trademark law.

## IV. ARGUMENT

### A. The Arbitrator Manifestly Disregarded the Language of the License Agreement and the Law of Contracts to Conclude that Defendants Violated Their Agreements with Plaintiff.

As set forth above, at the hearing, Defendants specifically brought to the attention of the arbitrator the fact that the Contributor Agreement explicitly and specifically permitted Mr. Lambert to make "fair use" of Plaintiff's materials. (Menhart Decl., ¶ 6, and Ex. B thereto.) Furthermore, in their Post-Trial Brief,[3] Defendants again brought that language—along with the black-letter principle of contract law that a contract is construed against its drafter—to the arbitrator's attention. (Menhart Decl., ¶ 6, and Ex. B thereto.)

The way the arbitrator handled the issue of the Contributor Agreement is an especially concerning example of a legally significant issue having been mishandled. The contracts were clearly part of the record, and the relevant agreement specifically contemplated that fair use might be made of Plaintiff's works. This critical fact was ignored. Instead, the arbitrator apparently chose to interpret the Contributor Agreement's guarantee of the right to fair use as meaningless surplusage, thus violating a time-hallowed principle of contractual interpretation. See, e.g., Manley v. AmBase Corp., 337 F.3d 237, 250 (2d Cir. 2003). Essentially, although the arbitrator was made aware of the Contributor Agreement's fair-use guarantee, she simply read that section out of the contract for no apparent reason. (Keyes Decl., Ex. 2.). Despite being

---

[3] The Post-Trial Brief discusses these issues in detail, with substantial legal citation. Defendants expressly incorporate the Post-Trial Brief by reference to this Opposition.

aware of this foundational principle of contract law, the arbitrator chose to ignore it—which is a hallmark of "manifest disregard" of the law. Biller, 668 F.3d at 665.

If the arbitrator had appropriately considered the fair use issue, she would have concluded that Plaintiff's *de minimis* use of the materials clearly fell under the protection of the fair use doctrine. As Defendants pointed out to the arbitrator, the fair-use analysis involves the consideration of four factors: (1) the purpose and character of the use (including whether the use is commercial or noncommercial); (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work *as a whole*; and (4) the effect of the use upon the potential market for or value of the copyrighted work. Lenz v. Universal Music Corp., 572 F.Supp.2d 1150, 1155 (N.D. Cal. 2008), citing 17 U.S.C. § 107 (Menhart Decl., ¶ 6, and Ex. B thereto, at 3-4.)

Here, too, the arbitrator manifestly disregarded the law by treating the issue of fair use as, of all things, a *breach of contract defense*. More specifically, she states that the contract only says that fair use may be an exception to copyright law. (Keyes Decl., Ex. 2 at 12-13 n.6). The arbitrator made no acknowledgement of the well-established principle that words and phrases and terms are generally not added to a contract for no reason at all, which is how she treated the fair-use reference in the License Agreement. This omission goes well beyond a garden-variety legal error—in effect, it rewrites the contract.

Even the arbitrator's brief treatment of the fair-use issue indicates a manifest disregard for well established law that was brought to her attention. For example, in determining the purpose and character of the use, the arbitrator reasoned that "fair use" is not an available argument for an accused infringer who is engaged in commercial activity. (Keyes Decl., Ex. 2 at 12-13 n.6.) However, this is simply not correct: indeed, the trend in the law is that where, as here, the use of a copyrighted work is transformative (Menhart Decl., ¶ 6, and Ex. B thereto, at 4, and cases cited therein), the issue of whether the use is commercial or non-commercial becomes essentially unimportant. Cf. Liu, Jiarui, "An Empirical Study of Transformative Use in Copyright Law," 22 STAN. TECH. L. REV. 163, 186 (2019) (finding that "where the defendant's use was found commercial, a finding of transformative use… increased the chance of a fair use

finding from 4.2% to 94.9%, among the 238 dispositive decisions sampled"). And here, the work was indeed transformative: as pointed out in Defendants' post-trial brief, even Plaintiff admitted that the way Defendants used the text modified that text in a very substantial way. (Menhart Decl., ¶ 6, and Ex. B thereto, at 4.)

The second prong of the fair-use analysis, which considers the nature of the copyrighted work, takes the spotlight off the alleged infringement and trains it squarely on the copyrighted work. And no less of an authority than the Supreme Court—and the arbitrator was made aware of this—has held that "copyright in a factual compilation is thin." (Menhart Decl., ¶ 6, and Ex. B thereto, at 4, citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349 (1991).) The arbitrator *did not even consider this issue* even though it was highlighted for her in Defendants' post-hearing brief. (Keyes Decl., Ex. 2 at 13.)

The third prong of the fair use issue, which evaluates the amount and substantiality of the portion used in relation to the copyrighted work *as a whole*, received even worse treatment. In the Interim Award, the arbitrator *acknowledged that Defendants were correct* that the "amount and substantiality" prong compares the amount of material infringed with the size of the overall work. (Keyes Decl., Ex. 2 at 14.) Then, apparently because Defendants did not put on an expert to calculate the exact percentage of material that infringed (Defendants had estimated the overlap as less than 1%, and cites to evidence adduced at the hearing on that issue on pages 7-9 of its post-hearing brief, (Menhart Decl., ¶ 6, and Ex. A thereto), the arbitrator summarily dismissed Defendants' argument in that regard, holding that "that problem is ultimately Respondents' problem." (Keyes Decl., Ex. 2 at 14.) It is difficult to imagine a more blatant refusal to regard the law and the facts that the parties had asked (and paid) the arbitrator to evaluate.

The fourth prong of the fair use issue, which looks to the effect of the use on the potential market for or value of the copyrighted work, did not receive much more depth of treatment. Once again, Defendants brought the law and the evidence to the arbitrator's attention, pointing out that even according to Plaintiff, there had been no individualized harm, only "concern" on the part of one of the Plaintiff's witnesses for some unexplained future "damage" to the industry in general. (Menhart Decl., ¶ 6, and Ex. B thereto, at 10.) The arbitrator's response? Although it

is difficult to parse, it appears that the arbitrator took the position that because her (incorrect) analysis held against a finding of fair use on the first three factors, "Claimant established that it was damaged[.]" (Keyes Decl., Ex. 2 at 15.) This is not only a disregard of the law and the facts—it represents a complete abdication of the arbitrator's responsibility to evaluate the case.

For all these reasons, Defendants urge this Court to find that with respect to Plaintiff's contract/copyright claims, the arbitrator displayed a "manifest disregard" for the law. And from that finding, Defendants respectfully request that this Court concludes that the award cannot be confirmed.

**B. The Arbitrator Manifestly Disregarded the Law of Fair Use to Conclude that Defendants Infringed Plaintiff's Trademark.**

As noted above, one of Plaintiff's primary claims in the arbitration is that Defendants infringed their trademark by using its marks (and "confusingly similar") marks on their business website and in "materials associated with webinars" that Defendants offered. Plaintiff's position is that it and Defendants offer many of the same educational-type goods and services to overlapping audiences. Therefore, according to Plaintiff, the inclusion of its mark on materials that were used in Defendants' presentations and the use of the mark "Business Architecture Info" (as opposed to Plaintiff's name, Business Architecture *Guild*), was confusing similar.

The threshold inquiry in a trademark infringement case is whether the defendants are using the challenged mark in a way that identifies the source of their goods. See, e.g., Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 619 (6th Cir. 2009). If the plaintiff does not make that showing, then their infringement claim is over before it starts. Id. At the hearing, Defendants presented testimony indicating that his use of the trademarks in his presentations, which were buried deep in various exhibits and constituted only a few slides out of approximately 200—and those slides were used in order to *refer Defendant Lambert's students to Plaintiff*. (Menhart Decl., ¶ 6, and Ex. B thereto, at 13, citing to Hearing Transcript at 316:17-23.) For that reason, the arbitrator should not have even entertained the trademark infringement claim at all, and her insistence on doing so represents a manifest disregard for the law.

Furthermore, for a plaintiff to prevail on a trademark-infringement claim based on likelihood of confusion, that plaintiff must show that the defendant used the mark in a manner that is likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the goods or services at issue. 15 U.S.C. § 1114(1).  To prove trademark infringement, a trademark holder must show that a defendant's use of its trademark is likely to cause confusion, to cause mistake, or to deceive. See Adobe Sys. Inc. v. Christenson, 809 F.3d 1071, 1081 (9th Cir. 2015); see also Arcona, Inc. v. Farmacy Beauty, LLC, 976 F.3d 1074, 1079 (9th Cir. 2020) (holding that "a counterfeit claim requires a showing of likelihood of confusion under Section 1114.").

Generally, the burden of proof in infringement rests with the plaintiff. Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir. 2002) ("Overall, the plaintiff retains the ultimate burden of persuasion in a trademark infringement action, namely proof of infringement."). To show the likelihood of confusion, the relevant inquiry from the test set forth in AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792 (9th Cir. 2003), is the issue of actual confusion. Although the failure to prove instances of actual confusion is not dispositive on its own, Off. Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1383 (9th Cir. 1993), it is also true that past confusion demonstrates a likelihood of future confusion. And there was not a scintilla of evidence provided in the arbitration hearing of any confusion at all. Entrepreneur Media v. Smith, 279 F.3d 1135, 1151 (9th Cir. 2002) (in jury trial context, holding that a reasonable juror could find *de minimis*, and thus unpersuasive, one instance of actual confusion). Indeed, the evidence that was presented tended to indicate the opposite: Plaintiff's own witness admitted in his hearing testimony that nobody *ever* expressed any confusion to him (and by extension, to Plaintiff). (Menhart Decl., ¶ 6, and Ex. B thereto, at 13-14, citing to Hearing Transcript at 216:3-7.)

Both the law and these facts were clearly presented to the arbitrator at the hearing. And she chose to recognize the existence of the legal rules, and of the facts, and to disregard them anyway. This is exactly the type of situation in which the "manifest disregard" doctrine calls for

the court to step in and decline to confirm the award. Coutee, 336 F.3d at 1133 (where award is "legally irreconcilable" with the undisputed, legally dispositive facts, there is manifest disregard).

**V. CONCLUSION**

For the reasons set forth above, Defendants respectfully request that this Court DENY Plaintiff's Motion to Confirm the Arbitration Award.

* * *

Respectfully submitted,

/s/ Eric J. Menhart

Eric J. Menhart, Esq. *

* *Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed via ECF and all parties of record were automatically notified via that system.

/s/ Eric J. Menhart

Eric J. Menhart, Esq. *

* *Admitted Pro Hac Vice*