**AMERICAN ARBITRATION ASSOCIATON**

| | |
|---|---|
| BUSINESS ARCHITECTURE GUILD<br><br>v.<br><br>DANIEL LAMBERT and<br>8781877 CANADA INC. D/B/A<br>BUSINESS ARCHITECTURE INFO. | Case No. 01-23-0003-2525 |

## <u>ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS OF RESPONDENTS LAMBERT AND 8781877 CANADA INC.</u>

Respondent/Counter-Claimants Daniel Lambert and 8781877 Canada, Inc.

("Respondent" or "Respondents" or "BAI") hereby responds to Claimant Business Architecture Guild's ("Claimant" or "BAG") Complaint. Respondent also asserts a series of affirmative defenses and a series of counterclaims against Claimant.

### Introduction[1]

1.      Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

2.      Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

3.      Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

4.      Admitted that Lambert is a former member of the Guild. Admitted that 8781877 Canada Inc. is the legal owner of the materials. Denied that Mr. Lambert has any personal liability to Claimant in this matter.

---

[1] Headings herein follow the headings of the Claimant's initiating document.

1

Exhibit A to Menhart Affidavit

5.      Admitted that Respondent and the Guild agreed to an arbitration provision. Denied as to any other claims as to the legal effect of the contractual provisions.

6.      Denied. Respondents have not and do not offer training materials and courses to consumers and potential consumers surreptitiously obtained from Claimant. Therefore, Respondents' conduct is not causing any harm or damage to Claimant.

7.      Denied.

8.      The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

9.      Denied.

10.     Denied.

**Parties, Jurisdiction and Venue**

11.     Respondents are without sufficient knowledge or information to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

12.     Lambert is a principal of the business, but any rights relevant to the instant dispute are owned by the business, 8781877 Canada Inc.

13.     Admitted.

14.     The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.[2]

15.     The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

---

[2] Respondents admit that this matter is properly before the American Arbitration Association at this time.

2

Exhibit A to Menhart Affidavit

**Background Supporting Claims**

16.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

17.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

18.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

19.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

20.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations.[3] To the extent a response is required, the statements of that paragraph are denied.

21.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

22.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

23.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

24.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

25.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

---

[3] Respondents do note that many of the claimed registrations appear on the "Supplemental Register," which confers substantially fewer rights to a mark holder.

Exhibit A to Menhart Affidavit

26.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

27.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

28.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

29.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

30.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

31.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

32.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

33.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

34.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

35.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

36.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

Exhibit A to Menhart Affidavit

37.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

38.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

39.     Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

40.     Admitted.

41.     Admitted that Lambert was a member of the Guild for a time and was also a "contributing member" for a time. Further admitted that Lambert is no longer a member of the Guild.

42.     The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

43.     The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

44.     The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

45.     Admitted.

46.     Respondents admit that the arbitration provision of the License Agreement is applicable to the instant dispute. As to the other allegations, Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

47.     The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

Exhibit A to Menhart Affidavit

48.    The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

49.    The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

**Respondent's [Alleged] Misappropriation of the Guild's Materials**

50.    Denied.

51.    Admitted that Lambert accessed certain materials. Denied as to the other allegations relating to BAI.

52.    Admitted.

53.    Admitted.

54.    Admitted.

55.    Denied.

56.    Denied.

57.    Denied.

58.    Denied, generally, and specifically denied that the highlighted content is "identical."

59.    Denied.

60.    Denied.

61.    Admitted.

62.    Admitted.

63.    Admitted.

64.    Respondents admit that there was a business relationship with EA Principals, but deny any specific allegations.

Exhibit A to Menhart Affidavit

65.    Denied.

66.    Denied.

67.    Respondents deny the allegations as drafted.

68.    Denied.

69.    Denied.

70.    The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

71.    The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

72.    Admitted.

73.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

74.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

75.    Denied.

76.    Denied.

77.    Respondents admit that https://www.businessarchitecture.info is the website of 8781877 Canada, Inc. Denied as to other allegations.

78.    Denied.

79.    BAI admits that it offers alternative content to that offered by BAG but does not admit that it offers competing training or consulting services. Denied that any of the content infringes on the rights of any third party.

Exhibit A to Menhart Affidavit

80.    Respondents do not admit that its products are marketed in "the same industries," but cannot admit or deny whether third-party customers may consider the products competitive.

81.    Respondents admit that the Respondents' original content is sold on the BAI website.

82.    Respondents admit that BAI's courses are sold for a fee.

83.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

84.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

85.    Denied as alleged.

86.    Denied.

87.    Denied.

88.    Denied.

89.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

90.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

91.    Denied.

92.    Denied.

93.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

94.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

Exhibit A to Menhart Affidavit

95.    The exhibit speaks for itself. Respondents deny any allegation that is inconsistent with the document.

96.    Denied.

97.    Denied.

## First Claim – Breach of Contract

98.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

99.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

100.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

101.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

102.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

103.    Denied.

104.    Denied.

105.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

106.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

Exhibit A to Menhart Affidavit

## Second Claim – Trademark Infringement – 15 U.S.C. § 1114

107.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

108.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

109.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

## Third Claim – Unfair Competition – 15 U.S.C. § 1125(a)

114.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

115.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

116.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

117.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

118.    Denied.

119.    Denied.

Exhibit A to Menhart Affidavit

120.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

### Fourth Claim – Cal. Bus. & Prof. Code § 17200 et seq.

121.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

122.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

123.    Denied.

124.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

125.    Denied.

126.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

### Fifth Claim – Unfair Competition Under California Common Law

127.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

128.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

129.    The allegations of this paragraph are conclusions of law to which no response is required. To the extent a response is required, the statements of that paragraph are denied.

130.    Denied.

131.    Denied.

Exhibit A to Menhart Affidavit

132.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

133.    Respondents are without sufficient knowledge to form a belief as to the truth of the allegations. To the extent a response is required, the statements of that paragraph are denied.

* * *

## AFFIRMATIVE DEFENSES

Respondents further defend based on the following affirmative defenses:

### Laches

1.    Claimant's unreasonable delay in assertion of its purported rights against Respondent had the effect of material prejudice to Respondents as a result of Claimant's delay. During the applicable period, Respondents continued to invest resources in the business. Respondents' business continued to grow and operate successfully as a result of Respondents' continued and ongoing use of the intellectual property.

### Unclean Hands

2.    Claimant has acted in bad faith toward Respondent as to the matters contained in the Complaint. Claimants' prior bad faith actions preclude relief against Respondent.

### Waiver

3.    If Claimant ever had any legal right to preclude Respondent's use of the purported trademarks, Claimant freely and knowingly gave up its rights by waiving any rights it previously held. Respondent relied upon Claimants' waiver of any rights, and such waiver cannot now be reneged given Respondent's detrimental reliance on Claimant's waiver of rights.

Exhibit A to Menhart Affidavit

### Failure to Mitigate Damages

4.    Claimant has not taken reasonable action to minimize any harm or costs it claims were caused by Respondent. Based on the lack of reasonable action on the part of Claimant, Respondent is now being blamed for harms that were not the result of his actions.

### No Actual Injury or Damages

5.    Even if Claimant demonstrates liability under any of its claims, Claimant cannot demonstrate any actual damages.

### Lack of Causation

6.    Respondent was not the proximate or legal cause of Claimant's alleged injuries.

### Abandonment

7.    Claimant abandoned its trademark(s) by failing to properly police its purported trademarks in the marketplace. Any purported rights Claimant may have had in any mark in the United States was abandoned, pursuant to 15 U.S.C. §1127.

### Implied License

8.    Claimants' failure to police its intellectual property, acquiescence to Respondent's use, and failure to act led to an implied license in Respondents' use of the trademarks. Respondents detrimentally relied upon the implied license in creating, developing, and maintaining its business.

### Acquiescence

9.    Claimant, as well as agents acting under its control, through its own actions and its failure to raise objections to Respondents' actions, acquiesced to, encouraged, or furthered Respondent's actions prior to this lawsuit, but now states an objection to Respondent's use.

Exhibit A to Menhart Affidavit

**Equitable Estoppel**

10.    Claimant's misleading conduct or inaction reasonably led to Respondents' reliance, which resulted in material prejudice to Respondents.

**Express Consent**

11.    Claimant, as well as agents acting under its control, expressly assented to, encouraged, or furthered Respondents' actions prior to this lawsuit, but now states an objection to Respondents' actions.

**Implied Consent**

12.    Claimant, as well as agents acting under its control, by clear implication, assented to, encouraged, or furthered Respondents' actions prior to this lawsuit, but now states an objection to Respondent's actions.

**No Likelihood of Confusion**

13.    The Claimant's purported trademarks are not likely to be confusing to consumers when compared to Respondent's marks, subject to the various *DuPont* factors, namely (1) the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression; (2) the similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use; (3) the similarity or dissimilarity of established, likely-to-continue trade channels; (4) the conditions under which and buyers to whom sales are made, i.e. impulse vs. careful, sophisticated purchasing; (5) the fame of the prior mark (sales, advertising, length of use); (6) the number and nature of similar marks in use on similar goods; (7) the nature and extent of any actual confusion; (8) the length of time during and conditions under which there has been concurrent use without evidence of actual confusion; (9) the variety of goods on which a mark is

Exhibit A to Menhart Affidavit

or is not used (house mark, 'family' mark, product mark); (10) the market interface between applicant and the owner of a prior mark; (11) the extent to which applicant has a right to exclude others from use of its mark on its goods; (12) the extent of potential confusion, i.e., whether de minimis or substantial; and (13) any other established fact probative of the effect of use.[4]

### Trademark "Fair Use" Under 15 U.S.C. § 1115(b)(4) and Common Law

14.    Respondents' use of the alleged intellectual property constituted fair use, because any use was unlikely to confuse consumers. Respondent's use of the purported marks was solely for the purpose of identifying the products it sold to its consumers without suggesting affiliation or sponsorship with the Claimant.

### Copyright "Fair Use" Under 17 U.S.C. § 107 and Common Law

15.    Respondents' alleged use of the alleged intellectual property constituted fair use of any work, and was not an infringement.

* * *

### COUNTERCLAIMS

Respondent/Counter-Claimant BAI hereby asserts counterclaims against Claimant/Counter-Respondent BAG and states as follows:

### Respondents' Business and Background

1.    BAI competes in the hyper-competitive space of content creation and training for industry professionals. There are numerous competitors in the space that provide original content, like BAI.

2.    Many content providers also provide training and consulting services in conjunction with their industry-facing content.

---

[4] *See In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357, 1361 (CCPA 1973).

Exhibit A to Menhart Affidavit

3.      BAI markets all of its goods and services under the descriptive name "Business Architecture Info." The mark "Business Architecture Info," is identical to the URL https://www.businessarchitecture.info, owned by BAI, as shown in Exhibit A.

4.      Respondents launched https://www.businessarchitecture.info on July 1, 2022. The website is the primary method by which Respondents commercialize their industry-based business architecture frameworks, including PDF files and Excel files, training services, and consulting services. Respondents do not market their goods and services to the "government" industry.

5.      For example, BAI's "Transportation Business Architecture Framework and Examples Excel File" is for sale online for $1,499.50 and its "Transportation Framework Diagram PDF File" is for sale online for $399.50. *See* https://www.businessarchitecture.info/transportation-business-architecture-reference-framework.

6.      Only one copy of the Transportation Business Architecture Framework and Example Excel file has been sold for $1,499.50 since the launch of their website, which corresponds to the period from July 1, 2022, to July 31, 2023.

7.      Since November 2022, Respondents have not sold even one copy of their "Transportation Business Architecture Framework and Examples Excel File" to any customer.

8.      Respondents have numerous competitors in the content industry, including Claimant. However, the Claimant and Respondent are not directly competitive in all industries.

9.      On information and belief, both Claimant and Respondent offer content for industries such as financial services, healthcare, insurance, manufacturing, telecom, and transportation.

Exhibit A to Menhart Affidavit

10.     Content offered by Respondents that could arguably be considered competitive with Claimant represent about 6% of Respondents' historical revenue, or less than $10,500 for the period from July 1, 2022, to July 31, 2023.

11.     However, Claimant does not offer its industry-based business architecture reference model for the utilities, pharmaceutical, and retail industries.

12.     Respondents' content goods that do not compete with Claimant historically represent about 12% of Respondents' revenue.

13.     Respondents started offering Agile Business Architecture courses on May 22, 2022, with its third-party training partner, EA Principals. *See* Exhibit F.

14.     EA Principals, a Virginia-based "specialist training provider," served as Respondents' training partner, and Respondents marketed and offered training services through EA Principals.

15.     Mr. Lambert was listed on EA Principals' website as a "Trainer," and the organization maintained a separate profile page containing the professional biography of Lambert from May 2022 until March 2023.

16.     EA Principals offers business architecture training programs throughout the United States via its webpage: https://www.eaprincipals.com/courses/class-schedule/.

17.     For example, the fee to attend Respondents' "Financial Services Agile Business Architecture" course is $1,995. Claimant does not offer any courses similar to Respondents' courses.

18.     Respondents cumulated revenue of about $84,500 for a period of about 9 months from May 22, 2022, to February 24, 2023, from their training partner, EA Principals.

Exhibit A to Menhart Affidavit

19.    From February 25, 2023, until July 31, 2023, which is a period of about 6 months, Respondents have cumulated revenue of $2,793.

20.    Respondents' materials were original content, created by Respondents, with very occasional and minimal use and references to third-party sources, consistent with "fair use" principles under United States law.

21.    Claimant does not offer any training or consulting services, as shown in Exhibit B.

22.    Accordingly, Respondents do not offer any training or consulting services that compete with Claimant.

23.    Respondents' training services historically represent about 82% of Respondents' revenue.

### Claimant's Anti-Competitive Behavior

24.    Despite the Respondents' original content, and clear "fair use" of occasional third-party resources, Claimant, and its principal, William Ulrich, became angry that it was facing new competition in the marketplace. Ulrich's LinkedIn Profile is attached as Exhibit C.

25.    For example, Business Architecture Associates (Exhibit D), is a for profit company operated and owned by the President of Claimant, William Ulrich.

26.    Because Respondents' Business Architecture Info also offered training services, it threatened Mr. Ulrich's profits.

27.    Another firm, Tactical Strategy Group, Inc. (Exhibit E), is a for profit company operated and owned by the President of Claimant, William Ulrich.

28.    Frustrated by the new competition, Claimant began a hyper-aggressive campaign to harass Respondents and put them out of business.

Exhibit A to Menhart Affidavit

29.    On July 28, 2022, Claimant, by way of its counsel, sent Lambert a "Notice of Disciplinary Action and Opportunity to Submit Written Statements and Evidence," identifying Respondent's alleged misappropriation of Claimant's materials.

30.    Respondents did not respond on July 28, 2022, because it had not misappropriated or misused any of Claimant's materials.

31.    Moreover, Lambert had not found value in being a member of the Guild and was not concerned about being permanently expulsed from the Guild.

32.    The Claimant subsequently terminated Lambert's membership on August 13, 2022.

33.    Around the same time, July 26, 2022, Claimant hired Alcorn Law and DMCA Pro Incorporated to send a "DMCA Takedown" Notice. *See* Exhibit G.

34.    The Notice claimed, among other things, that as many as six of Respondents' offerings were infringing copyrights purportedly owned by Claimant. *Id.*

35.    The Notice did not reference any registered copyright owned by Claimant. *Id.*

36.    Moreover, the Notice was flawed in numerous other ways. First, Claimant's rights were purportedly being violated by material available upon the Respondents' website regarding the financial services, healthcare, manufacturing, and transportation business architecture frameworks and example Excel files. *Id.*

37.    Strangely, Claimant's agents DMCA Pro Incorporated and Alcorn Law Corporation claimed that the "utilities" business architecture frameworks, and example Excel file and PDF file, also violate the Claimant rights. Yet, Claimant offered no "utilities" reference model on its online reference model web store. *See* Exhibit H.

Exhibit A to Menhart Affidavit

38.     Moreover, Claimant and its agents made no efforts, whatsoever, to consider the Respondents' "fair use" of any purportedly infringing content in clear violation of applicable law.[5]

39.     After receipt of the DMCA demand, Respondents' web host, Wix, "blocked" Respondent's site on August 10, 2022, and it was only "reopened" again on August 15, 2022.

40.     However, BAI was no longer able to automatically sell, through PayPal, Respondents' Excel files.

41.     Since August 15, 2022, Respondents have not sold automatically through PayPal any of their Excel files on their website. Excel files are sold at $1,499.50 each. PDF files are sold at $399.50 in comparison. Because of this constraint, BAI estimates it has lost a minimum of $20,000 to date.

**Claimant's Intentional Breach of Contract and Interference with Respondent's Business**

42.     On March 3, 2023, Despite Claimant having drafted the license agreement containing the clear arbitration clause, Claimant filed a Complaint in the U.S. District Court for the Northern District of California. *See* Exhibit J.

43.     Claimant filed the Complaint[6] in the federal court purely for purposes of harassing Respondents.

---

[5] ". . . because 17 U.S.C. § 107 created a type of non-infringing use, fair use is 'authorized by the law' and a copyright holder must consider the existence of fair use before sending a takedown notification under § 512(c)." *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1153 (9th Cir. 2016).
[6] The Complaint in the federal court was submitted in its entirety when Claimant instituted the instant arbitration.

Exhibit A to Menhart Affidavit

44.     Claimant, and its attorneys, knew that the filing of the complaint in the federal court was in clear violation of the arbitration clause, but undertook the action consistent with Claimant's other anti-competitive and harassing behavior.

45.     Moreover, Claimant knew that Respondents would be entitled to "an award of attorney's fees and costs" in association with Respondent's defense, based on the language of the arbitration clause that Claimant itself drafted.

46.     On March 15, 2023, upon hearing about the suit, Respondents sent a letter to Claimant's attorneys, offering to, among other things, compare the documents that Claimant was alleging were infringing. *See* Exhibit L. There was no substantive response by Claimant to this offer.

47.     On March 23, 2023, Claimant's attorney, J. Michal Keyes, drafted and delivered a letter to EA Principals, Inc. *See* Exhibit K.

48.     Mr. Keyes knew that that Respondents and EA Principals had a contractual or other business relationship.

49.     Mr. Keyes intended to interfere with the known business relationship on behalf of his client.

50.     Keyes inaccurately stated that "Mr. Lambert and his company have and continue to engage in massive amounts of improper conduct, including but not limited to infringing and misappropriating The Guild's intellectual property." *Id.*

51.     Keyes also demanded that EA Principals "immediately cease" working with Respondent Mr. Lambert. *Id.*

52.     Keyes personally signed the letter. *Id.*

53.     Keyes' statements to the third party were libelous and defamatory.

Exhibit A to Menhart Affidavit

54.     Keyes' letter had the intended result. EA Principals stopped promoting the courses offered by Respondents by EA Principals after receiving the letter from the Claimant's attorney.

55.     Moreover, the profile and name of Respondent Lambert disappeared from EA Principals' website on about March 18, 2023.

56.     EA Principals also stopped all promotion and social media posting about the Respondent, Daniel Lambert around March 18, 2023.

57.     Given the existence of the lawsuit and the ongoing defamatory statements, Respondents retained counsel in April of 2023. Undersigned counsel engaged with Claimant's counsel in further efforts to resolve the matter.

58.     On June 26, 2023, Claimant's counsel again wrote a letter to EA Principals, expressly recognizing the "continued partnership" between EA Principals and BAI. *See* Exhibit M.

59.     Claimant's counsel also expressly demanded that EA Principals "cease" working with Respondents. *Id.*

60.     On June 29, 2023, Respondent, through counsel, filed a Motion to Dismiss in the federal court. *See* Exhibit O. The motion expressly sought attorney's fees pursuant to the agreement between the parties.

61.     The Motion explained, in detail, how the Claimant's filing in federal court was meritless, and plainly contrary to applicable law. *Id.*

62.     On July 6, 2023, Claimant's counsel wrote a third letter to EA Principals. *See* Exhibit N.

Exhibit A to Menhart Affidavit

63.     Among other things, Claimant and its counsel engaged in thinly veiled threats to the third party, claiming, among other things that Claimant would "issue a subpoena" when Claimant had no right to issue a subpoena at the time of the letter, and knowing Respondents had already filed a Motion to Dismiss in the federal court.

64.     The letter also threatened that "cooperating now may avoid the need for EA Principals to get formally involved" in this litigation.

65.     Finally, Claimant's counsel falsely claimed that Lambert had not offered to provide access to his materials. To the contrary, Claimant, and its counsel, knew that Lambert was more than willing to discuss the matter in more detail, by way of Lambert's March 15, 2023 letter to Mr. Keyes himself. *Id.*

66.     Recognizing that its federal complaint was meritless and that fees would be awarded, Claimant did not respond to the Motion to Dismiss, but instead offered to stipulate to have this matter arbitrated. A stipulation was filed in the federal court on July 13, 2023. Respondent expressly reserved its right to seek fees. This action follows.

### Counterclaim I – Breach of Contract

67.     Respondents repeat and reassert each and every statement contained in all preceding Paragraphs as if set forth herein.

68.     The Parties had a contract in place that called for arbitration of disputes.

69.     Claimant itself had drafted the contract.

70.     Despite knowing that filing a lawsuit in a federal court would be a clear, unequivocal breach of the contract, Claimant did so.

Exhibit A to Menhart Affidavit

71.     Respondents incurred damages because of substantial attorney's fees incurred in the drafting and filing of the Respondent's Motion to Dismiss, which would not have been incurred but for the Claimant's unlawful federal filing.

72.     Respondents suffered damages as a result, in an amount to be proven.

### Counterclaim II – Intentional Interference with Contract

73.     A claim for intentional interference with a contract may be alleged when there is (1) a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.[7]

74.     In this case, there was a contract between Respondents and EA Principals.

75.     Claimant and its agent knew that Respondents had a contract with EA Principals because the contractual relationships was publicly known and identified by way of the online advertising of joint training offerings.

76.     Claimant and its agents sent multiple letters to EA Principals, expressly demanding a disruption of the contract.

77.     There was an actual breach in the contract because EA Principals made changes to its offerings and advertising in response to Claimant's threatening behavior.

78.     Respondents suffered damages as a result, in an amount to be proven.

---

[7] *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990)

Exhibit A to Menhart Affidavit

**Counterclaim III - Misrepresentation Pursuant to 17 U.S. Code § 512(f) ("DMCA")**

79.     Claimant and its agents willfully, knowingly, and materially made § 512(f) misrepresentations to third parties that Respondents' content was infringing Claimant's intellectual property.

80.     On information and belief, Claimant did not hold a valid copyright registration or certificate pertaining to the content contained in Respondent's materials at the time of the misrepresentations. At the minimum, no particular copyright registration is cited in the notice. *See* Exhibit G.

81.     Respondents' materials were not infringing, or the Respondent's materials were used lawfully in accordance with 17 U.S.C. § 107 of the Copyright Act, which Claimant and its agents unlawfully failed to consider before sending its notice.[8]

82.     Respondents' materials were "blocked" as a result of the notices sent to Respondents' web host.

83.     Respondents were damaged as a result, in an amount to be proven.

**PRAYER FOR RELIEF**

WHEREFORE, Respondents respectfully requests:

1.     That Claimants take nothing arising from its claims.

2.     Declaratory relief, stating that Respondents do not infringe, in any way, any rights purportedly owned by Claimant.

---

[8] *See Lenz v. Universal Music Corp.*, 572 F. Supp. 2d 1150, 1154–55 (N.D. Cal. 2008) ("An allegation that a copyright owner acted in bad faith by issuing a takedown notice without proper consideration of the fair use doctrine . . . is sufficient to state a misrepresentation claim pursuant to Section 512(f) of the DMCA.").

Exhibit A to Menhart Affidavit

3.      An award for damages, in an amount to be proven, which may or may not include an election of any and all statutory damages, treble damages, punitive damages or other damages that may be available to Respondent under any statute or cause of action.

5.      An award of attorney's fees to Respondents, pursuant to contract, any applicable statute allowing or requiring such fees, or pursuant to common law; including, but not limited to 17 U.S. Code § 512(f) and the other statutes cited herein.

6.      An award to Respondent of reasonable litigation expenses.

7.      An award to Respondents of pre-judgment and post-judgment interest, to the extent allowable; and

8.      Such further relief as this Panel may deem just and proper.

* * *

Respectfully submitted,

/s/ Eric Menhart
Eric Menhart, Esq.
Lexero Law
512 C St NE
Washington, DC 20002
Phone: 855-453-9376
Fax: 855-453-9376

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, the foregoing was served via email to:

keyes.mike@dorsey.com
hansen.connor@dorsey.com

/s/ Eric Menhart
Eric Menhart, Esq.

Exhibit A to Menhart Affidavit